IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY GINTZ, SHERRY OWEN and MARIA MACIAS, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>JACK IN THE BOX, INC., and DOES 1 through 25, inclusive,<br><br>    Defendant.<br>_____/ | No. C 06-02857 CW<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION TO STAY OR DISMISS AND DENYING IT IN PART |

    Defendant Jack In The Box, Inc. moves to stay or dismiss this action pursuant to the Colorado River doctrine. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976). Plaintiffs oppose the motion. The matter was decided on the papers. The Court has considered all of the papers filed by the parties. With respect to the California class, the Court

grants Defendant's motion to stay the federal claims and grants its motion to dismiss the State claims. With respect to the nation-wide class, the Court denies Defendant's motion to stay or dismiss the federal claims made on behalf of class members who worked at a JIB outside of California.

BACKGROUND

On April 21, 2004, as a representative plaintiff, Beverly Gintz filed a class action lawsuit against Defendant Jack In the Box, Inc. (JIB) in Orange County Superior Court, Case No. 04CC00204 (State action). Gintz has amended that complaint twice since then. The second amended complaint (SAC) in State court asserts two causes of action on behalf of a class of non-exempt employees who worked the night shift in any JIB in California at any time since January 1, 2001. The first cause of action alleges violation of the California Labor Code §§ 226.7 and 512 for JIB's failure to provide meal and rest periods. Freudenberger Dec., Ex. A, State SAC ¶ 31-36. The second cause of action alleges violation of the Unfair Competition Act, California Business & Professions Code §§ 17200-17208, for unfair business practices. State SAC ¶ 37-42. The common factual allegations in the complaint are that JIB "failed to provide net ten minute rest periods for work shifts exceeding four hours or a major fraction thereof . . . and/or uninterrupted, unrestricted meal periods of not less than thirty minutes for work shifts exceeding five hours to those non-exempt restaurant employees within the class definition . . . thereby enjoying a significant competitive edge over other corporations within its industry." State SAC ¶ 24. Gintz also alleges that

2

"upon termination or resignation of the employment of numerous Class Members, JIB has declined to compensate these employees." Id.  Gintz alleges that "as a direct and proximate result of Defendant's unlawful conduct . . . the Representative Plaintiff and members of the Plaintiff Class have sustained damages . . . including a loss of compensation, in amounts to be established at trial."  Id. ¶ 30.

On January 26, 2006, the parties to the State court case participated in a settlement negotiation with mediator Lynne Frank. That same day, the parties signed a Memorandum of Understanding (MOU) agreeing to "a limited release by the class members of all claims in the Second Amended Complaint . . . and a General Release including a Section 1542 waiver by Plaintiff Gintz and specifically including Plaintiff Gintz's retaliation claim."  Freudenberger Dec., Ex. B ¶ 10.  JIB agreed to pay up to $5 million on a claims-made basis with $1.25 million of that settlement amount to be paid to Gintz's counsel and $20,000 paid as an enhancement to Gintz. Freudenberger Dec., Ex. B ¶¶ 1, 3, 11.

During Gintz's investigation of the State claims, it appeared that JIB's unlawful policies and practices were "ubiquitous, affecting employees throughout the United States, not just within California."  Charlton Dec. ¶ 4.  On April 27, 2006, Gintz filed the instant case against JIB asserting four causes of action.[1]  The first cause of action alleges, on behalf of a nation-wide class and

---

[1] Gintz filed a first amended complaint (FAC) in the instant case on October 10, 2006 adding Sherry Owen and Maria Macias as Representative Plaintiffs.  Complaint ¶¶ 14; FAC ¶¶ 14.

3

a California class, violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 206-207, and/or the California Labor Code for unlawful failure to pay wages due, based on being required to work in excess of eight hours per day or forty hours per week and to work through paid or unpaid meal and rest breaks.  Complaint ¶ 35-37.  The second, third and fourth causes of action are asserted on behalf of the California class only.  The second cause of action alleges failure to provide meal and rest periods in violation of California Labor Code §§ 226.7 and 512, and §§ 11 and 12 of the applicable Industrial Welfare Commission Wage Orders.  Id. ¶ 42-45.  The third cause of action asserts violations of California Labor Code §§ 226 and 1174 for failure to provide accurate itemized wage statements.  Id. ¶ 48-51.  The fourth cause of action asserts violations of the California Business & Professions Code §§ 17200-17208 for unfair business practices.  Id. ¶ 55-58.

The California class includes all non-exempt employees of JIB working the night shift at any JIB in California, at any time since April 27, 2002.  Id. ¶ 22.  The nation-wide class includes all non-exempt employees of JIB working the night shift at any JIB in the United States, at any time since April 27, 2003.  Id.

The common factual allegations in the federal complaint are that JIB "knowingly failed to pay all compensation" to members of both the nation-wide and California classes by failing to pay minimum wages and/or overtime wages due under State and federal law.  Complaint ¶ 25.  Plaintiffs also allege that JIB "failed to provide net ten minute rest periods for work shifts exceeding four hours or a major fraction thereof . . . and/or uninterrupted,

4

1  unrestricted meal periods of not less than thirty minutes for work
2  shifts exceeding five hours to the California Class Members" and
3  "JIB has thereby enjoyed a significant competitive edge over other
4  corporations within its industry."  Id.  Plaintiffs allege that
5  "upon termination or resignation of the employment of numerous
6  Class Members, JIB has declined to pay these wages, in blatant
7  violation of the law . . ."  Id. ¶ 26.  Plaintiffs also allege that
8  "as a direct and proximate result of JIB's unlawful conduct, as set
9  forth herein, the Representative Plaintiffs and Class Members have
10 sustained damages . . . including loss of earnings for unpaid
11 minimum wages and unpaid hours of overtime worked on behalf of
12 Defendant, in an amount to be established at trial."  Id. ¶ 32.
13      After Plaintiffs filed the federal action, Defendant brought a
14 motion for summary judgment in the State action to enforce the MOU
15 and Gintz filed a motion to dismiss the State action, seeking to
16 proceed only with the federal action.  On September 15, 2006, Judge
17 Stephen Sundvold of the Orange County Superior Court denied
18 Defendant's summary judgment motion on the ground that the MOU did
19 not contain the essential elements of a class action settlement.
20 Charlton Dec., Ex. A, State Order at 1.  Gintz's motion to dismiss
21 was also denied on the ground that allowing Plaintiff to proceed
22 only in her federal action, which covers a more limited time
23 period, would cause an abandonment of a large portion of the
24 putative class to which the State court and Gintz have a fiduciary
25 obligation.  State Order at 2.  Gintz then filed a motion for leave
26 to file a third amended complaint (TAC) in the State action to
27 limit the class period to January 1, 2001 to April 27, 2002, the
28

5

time period immediately preceding the class period for the California class in the federal action. Charlton Dec., Ex. B, State TAC ¶ 21. Her motion was denied at a hearing before Judge Sundvold on October 27, 2006. In the court's tentative ruling, which was later adopted at the hearing, Judge Sundvold stated that granting the motion would "lead to multiple lawsuits with regard to the same claims" in federal and State court and "[d]ismissing the redundant causes of action in the federal action would solve the problems of the duplicate causes of action." Defendant's Notice of Ruling on Plaintiff's Motion to Amend Complaint in Parallel Action, Ex. A at 2.

## DISCUSSION

I. Motion to Stay or Dismiss Action under the Colorado River Doctrine

In situations involving the contemporaneous exercise of jurisdiction by different courts over sufficiently parallel actions, a federal court has discretion to stay or dismiss an action based on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation. 424 U.S. at 817. The two actions need not exactly parallel each other to invoke the Colorado River doctrine; it is enough that the two cases are substantially similar. Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989). The mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel. Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc., 962 F.2d 698, 700-701 (7th Cir. 1992); see also Interstate Material

Corp. v. City of Chicago, 847 F.2d 1285, 1288 (7th Cir. 1988) (noting that the requirement is for parallel suits, not identical ones).

The federal district courts have a "virtually unflagging obligation" to exercise their jurisdiction, Moses H. Cone Hospital v. Mercury Constr. Corp., 460 U.S. 1, 19 (1983), and should only invoke a stay or dismissal under the Colorado River doctrine in "exceptional circumstances." Colorado River, 424 U.S. at 817. In Colorado River, the Supreme Court announced a balancing test weighing four factors to determine whether sufficiently exceptional circumstances exist: (1) whether either court has assumed jurisdiction over property in dispute; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the concurrent forums obtained jurisdiction. 424 U.S. at 818. The Court stated: "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." Id. at 818-19.

Subsequently, in Moses H. Cone, the Supreme Court added two more factors: whether State or federal law provides the rule of decision on the merits, and whether the State proceeding is adequate to protect the parties' rights. 460 U.S. at 23, 26. The Court stated that the decision to defer to a parallel action does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case. Id. at 16. The weight to be given to any one factor may vary greatly from case

7

1 to case, depending on the particular setting of the case.  Id.  The
2 decision whether to stay an action is necessarily left to the
3 discretion of the district court in the first instance.  Id. at 19.
4     A court may also consider whether the federal plaintiff is
5 engaged in "forum shopping" or seeking to avoid adverse State court
6 rulings.  Nakash, 882 F.2d at 1417.
7     In some circumstances, a stay may be preferable to a dismissal
8 because it "ensures that the federal forum will remain open if 'for
9 some unexpected reason the State forum does not turn out to be
10 adequate.'"  Attwood v. Mendocino Coast Dist. Hospital, 886 F.2d
11 241, 243 (9th Cir. 1989) (quoting Moses H. Cone, 460 U.S. at 28).
12     A.   Substantially Similar Cases
13     Plaintiffs contend that the State proceeding is not
14 substantially similar to the instant case because the cases cover
15 different claims and different class periods, and involve two
16 different Representative Plaintiffs and different class members.
17     In Nakash, the State and federal actions were substantially
18 similar because, even though the claims and parties were different,
19 all of the disputes concerned the same factual issue of how the
20 parties conducted themselves after the sale of a family business
21 and the parties in both actions were all related to the
22 transaction.  882 F.2d at 1416.
23     Although the federal action cites violations of statutes not
24 included in the State action, both actions allege the same factual
25 conditions and all of the claims involve the central factual issue
26 of whether or not JIB denied meal and rest period breaks to non-
27 exempt night shift workers, resulting in damages for work that was
28

8

performed "off the clock."

The class periods for the California class in the State and federal actions overlap. In the State action, Plaintiff Gintz filed a motion for leave to file a TAC to avoid this duplication by alleging a California class period from January 1, 2001 to April 27, 2002, which would precede the California class period in the federal action, beginning on April 27, 2002. As noted above, that motion was denied on October 27, 2006.

Plaintiffs also assert that the suits are brought by different plaintiffs and different class members. This argument is unavailing because the Colorado River doctrine does not require parties in both actions to be identical. Nakash, 882 F.2d at 1416. Gintz is a representative plaintiff in both actions and the addition of Macias and Owen as Representative Plaintiffs in the federal action does not change the identity of the California class members represented. Both actions represent non-exempt, night shift workers at JIB. The only difference between the classes in the State and federal actions is that the federal action includes a nation-wide class which consists of workers throughout the United States including California, as well as a California class. Because the State action class period overlaps with the class period in the federal action, California non-exempt night-shift workers who worked at JIB on or after April 27, 2002 are represented in both actions.

For the above-mentioned reasons, the Court finds that the cases are substantially similar, at least with respect to the California class, and considers the Colorado River doctrine.

9

B.  Balance of Relevant Factors

    1.  Jurisdiction Over Property and Convenience of Forums.

Citing Kelley Investment v. Continental Common Corp., 315 F.3d 494, 498 (5th Cir. 2002), Plaintiffs argue that the facts that there is no jurisdiction over property in this case and that either forum is equally convenient weigh in favor of allowing this case to proceed.

However, in Nakash, the court held that when "there is no res in the control of either court and the forums are equally convenient" those factors become irrelevant to the analysis. 882 F.2d at 1415, 1415 n.6. Therefore, these factors will not be weighed in the Colorado River doctrine balancing test.

    2.  Desirability of avoiding piecemeal litigation.

As stated above, the concurrent State and federal jurisdiction over the claims set forth in the State action will result in piecemeal litigation, at least with respect to the California class. Although the State action does not include federal and State minimum wage and hour claims or State claims for failure to provide accurate itemized wage statements on behalf of the California class, Plaintiffs have failed to explain why those claims cannot be added to the State action, at least on behalf of the California class. The California claims can be brought in a California court and the federal courts do not have exclusive jurisdiction over FLSA claims. See 29 U.S.C. §216(b) (actions for violations of section 206 and 207 may be brought against an employer in any federal or State court). By failing to bring all

10

of her claims in her State court litigation, Plaintiff Gintz's actions create the kind of piecemeal litigation that the <u>Colorado River</u> doctrine was developed to prevent. Therefore, this factor weighs in favor of staying or dismissing this action at least with respect to the California class.

        3.    Order in which the concurrent forums obtained jurisdiction.

Plaintiffs rely on <u>Moses H. Cone</u> for the proposition that the court must consider "how much progress has been made in the two actions" when weighing the desirability of avoiding piecemeal litigation. 460 U.S. at 21. Plaintiffs argue that the parties in the State action have made very little progress because no depositions have been taken and no class has been certified.

The State action was filed approximately two years prior to the filing of the federal action. The State court has ruled on "substantive matters and discovery matters" and the case was close to settlement in January, 2006. Freudenberger Dec. ¶¶ 2, 5. The federal action has merely proceeded to this motion. Because the State court action was filed two years prior to the federal action and little progress has been made in the federal action, this factor weighs in favor of staying or dismissing the State law claims made on behalf of the California class. This factor does not weigh in favor of staying or dismissing the federal claims made on behalf of the nation-wide class members who are not concurrently represented by the California class because they are not parties to the State action and that action does not include federal minimum wage and hour claims.

11

> 4. Whether State or federal law provides the rule of decision on the merits.

Plaintiffs argue that, although State law provides the rule of decision in the California claims and federal law provides the rule of decision in the federal claims, "the presence of a federal law issue must always be a major consideration weighing against surrender of jurisdiction." Moses H. Cone, 460 U.S. at 26.

Because both federal and California law apply to the first cause of action in the instant case, but California law is controlling in each of the remaining three causes of action, federal law plays a lesser role in this case. This factor weighs in favor of dismissing the State law claims made on behalf of the California class, allowing the State court to make decisions as to the proper application of State law.

The California minimum wage and hour laws are more beneficial to the California class than the federal minimum wage and hour laws because the State requirements are inclusive of, but more stringent than, the federal requirements and the State minimum wage is higher than the federal minimum wage.[2] This factor weighs in favor of granting a stay of the federal claims of the California class to allow the State court to proceed to a decision on the State court claims which will likely cause the federal claims to become moot.

---

[2] California State law requires compensation of one and one-half times an employee's regular rate of pay for work in excess of eight hours a day or forty hours a week, whereas federal law only requires compensation for work in excess of forty hours per week. California Labor Code § 510; 29 U.S.C. § 207(a)(1). The California minimum wage, effective January 1, 2002, is $6.75 per hour, whereas the federal minimum wage, effective September 1, 1997, is $5.15 per hour. California Labor Code § 1194; 29 U.S.C. § 206(a)(1).

12

Because nation-wide class members who worked at JIB outside of California are not protected by the more beneficial California State laws, a decision on the State minimum wage and hour claims by the State court will not resolve the federal claims of those members of the nation-wide class.  Therefore, this factor weighs in favor of allowing those claims to proceed in this Court, as long as Plaintiffs do not wish to bring them in the State action.

        5.    Whether the State proceeding is adequate to protect the parties' rights.

Plaintiffs argue that the State proceeding is not adequate to protect the rights of the parties because the federal law claims will not be addressed in the State court proceeding and that this Court should not stay the action because there is "substantial doubt as to whether the State proceedings will resolve the federal action."  Intel Corporation v. Advanced Micro Devices, 12 F.3d 908, 913 (9th Cir. 1993).

Because the State law claims could be brought in the State action and the determinative factual issues are the same in both cases, the State court can adequately protect the parties' rights as to those claims.  Although Plaintiffs have not added all of their State claims to the State action, it would appear that they could do so.  A dismissal of these claims in the federal action would allow the State court the opportunity to make decisions as to the proper application of its own laws.

Because, as noted above, the California minimum wage and hour laws are more beneficial to the California class than the federal laws, this factor weighs in favor of a stay of the federal minimum

13

wage and hour claims of the California class until resolution of the State action. As stated above, a decision in the State court will likely cause the federal claims of the California class to become moot.

A stay or dismissal of the federal claims on behalf of members of the nation-wide class who worked at a JIB outside of California is not appropriate because they are not included in the State action. This factor weighs in favor of allowing these federal claims to proceed.

### 6. Forum Shopping

On December 23, 2005, JIB's counsel and Gintz's counsel were before Judge Sundvold for a fairness hearing in an unrelated class action. Freudenberger Dec. ¶ 6. At the hearing, Judge Sundvold reduced the agreed-upon enhancement for the named plaintiff from $10,000 to $1,500 and reduced the attorneys' fees for the plaintiff's counsel from $116,666.00 to $60,000. Freudenberger Dec. ¶ 6; Freudenberger Dec., Ex. C, State Court Order Re: Final Approval of Class Action Settlement and Final Judgment Thereon at 4.

Defendant argues that Plaintiffs filed the federal action to avoid adverse rulings in the State court, citing the above-mentioned decision by Judge Sundvold. Plaintiffs deny forum shopping.

Because Plaintiffs have failed to provide a reason why all of their claims were not brought in State court, an inference could be drawn that the adverse ruling in the unrelated case instigated Plaintiffs' decision to file the federal action. Without deciding

14

whether Plaintiffs are indeed forum shopping, the Court finds that allowing a substantially similar federal action to proceed would likely encourage forum shopping. Therefore, this factor weighs in favor of granting a stay or dismissal in this case.

### 7. Summary

All of the relevant factors weigh in favor of dismissing the State claims and staying the federal claims made on behalf of the California class. The majority of relevant factors weigh in favor of allowing the federal claims made by members of the nation-wide class who worked at JIBs outside of California to proceed, if Plaintiffs can represent that class.

Within thirty days after resolution of the State action, if there are issues that must be resolved regarding the federal claims made by the California class, Plaintiffs may move to lift the stay and proceed with the remaining issues.

15

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the California claims is granted. Defendant's motion to stay the federal claims made on behalf of California class members is granted. Defendant's motion to stay or dismiss the federal claims made on behalf of members of the nation-wide class who worked outside of California is denied. A case management conference will be held on January 26, 2007 at 1:30 p.m.

IT IS SO ORDERED.

Dated: 11/28/06



CLAUDIA WILKEN
United States District Judge

16